UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD LEONARD CAVINESS,

    Petitioner,

v.

XAVIER BECERRA,[1]

    Respondent.

No. 2:16-cv-01109 JAM GGH

FINDINGS AND RECOMMENDATIONS

*Introduction & Procedural Background*

    Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

    Petitioner challenges his judgment and convictions entered against him on January 30, 2014 in the San Joaquin Superior Court. Petitioner was convicted of transportation of heroin, carrying a loaded firearm in public, being a felon in possession of ammunition, and possession of heroin with a loaded firearm for an aggregate prison term of sixteen years. On January 26, 2015,

---

[1] Kamala Harris was previously named as the respondent. Xavier Becerra is currently the California Attorney General. "A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition." Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) (citing Rule 2(a), 28 U.S.C. foll. § 2254). Accordingly, the court substitutes Xavier Becerra as respondent.

1

petitioner, through counsel, appealed his convictions with the California Court of Appeal, Third Appellate District Court, and the judgment was affirmed on August 4, 2015. Resp't's Lodg. Doc. Nos. 6, 9. Subsequently, on August 12, 2015, petitioner, through counsel, filed a petition for review in the California Supreme Court, and was denied on October 14, 2015. Resp't's Lodg. Doc. Nos. 10, 11. On May 2, 2016, petitioner in pro se, filed another petition for review with the California Supreme Court, and was denied on June 15, 2016. Resp't's Lodg. Doc. Nos. 12, 13.

Petitioner filed his original federal habeas petition on May 5, 2016 in the Northern District of California.[2] ECF No. 1. The case was subsequently transferred to the Eastern District of California and referred to the undersigned. ECF Nos. 7, 11. Respondent has filed an answer, and petitioner a traverse. ECF Nos. 24, 26. Petitioner alleges one ground for relief: insufficient evidence.[3]

*AEDPA Standards*

The statutory limitations of a federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an

---

[2] The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and federal court. Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period). In any event, the mailbox rule is inconsequential in this case.

[3] In his petition, petitioner alleges four claims – (1) insufficient evidence; (2) selective prosecution in bad faith; (3) the court failed to enter a judgment notwithstanding the verdict; and (4) an absence of proof as to the personal knowledge element. Although respondent argues procedural default bars claims two, three, and four, the more suitable view is that all of these latter claims are insufficient evidence claims stated differently. All of petitioner's claims rest on the same set of facts and argument – there was insufficient evidence to convict petitioner due to petitioner's brother's confession of possession and ownership of the gun and drugs. See ECF No. 1 at 5-10. Accordingly, claims two, three, and four will be subsumed into claim one.

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 562 U.S. 86, 101 (2011), citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 101, citing Yarborough v.Alvarado, 541 U.S. 652, 664 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or…could have supported [] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 102. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings [,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not

abide by the state court's factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, at 102. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Id. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record regarding that issue. Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; instead the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

4

habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013).

*Factual Background*

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual background:

> Stockton Police Officer Houston Sensabaugh and San Joaquin County Sheriff's Deputy Nick Taiariol were patrolling Stockton in October 2013. They stopped a white Mercedes after they witnessed the driver commit a number of traffic violations. As the Mercedes was pulling over, Officer Sensabaugh noticed the passenger (defendant) "messing with something" in the center console of the car. Officer Sensabaugh contacted the driver, Dante Caviness, and Deputy Taiariol contacted defendant. The car was registered to Dante.
>
> Dante was sweating and his hands were shaking, he appeared very nervous. Officer Sensabaugh asked Dante if there was anything illegal in the car and Dante answered he was not aware of anything. The officers had Dante and defendant step out of the vehicle, conducted a weapons search, and placed them both in handcuffs. Defendant was calm and cooperative. Deputy Taiariol searched the vehicle. He found a loaded .22–caliber revolver and four clear sandwich bags containing golf ball-sized blocks of heroin. The baggies contained 25.31 grams, 24.34 grams, 23.54 grams, and 25.18 grams of heroin; a total of 98.37 grams. Officer Sensabaugh also found $255 cash in defendant's pocket. In the trunk of the car, Deputy Taiariol found a box of .22 long rifle ammunition in a black and red backpack, unused packaging material, and a digital scale with brown sticky residue on it. Many rounds of ammunition were missing from the box, the same number that was loaded into the firearm. The ammunition in the backpack matched the firearm under the front seat. The residue on the scale was consistent with what would be on a scale used to measure this kind of heroin. The backpack in which the ammunition was found also contained a traffic citation issued to defendant.
>
> When Officer Sensabaugh approached the car from the driver's side, he could not see the gun or any contraband in plain view. Deputy Taiariol found the baggies of heroin in the storage pocket of the passenger side door. The storage pocket was not covered and the baggies were clearly visible from the front passenger seat. The gun was under the passenger seat, toward the front; the handle was closest to the front passenger door, with the barrel pointed toward the driver's side of the car. The gun was partially sticking out from under the seat, overlapping slightly with the floorboard mat, and was loaded with six rounds of .22–caliber ammunition.

////

5

The People admitted photographs of the car into evidence. The photographs included pictures of the storage pocket in which Deputy Taiariol found the heroin, and the position of the gun. The ballistics technician could not find any latent fingerprints on the gun, and the gun was not registered.

Detective Fritts testified as a narcotics expert in possession of heroin for sale. The average dose of heroin is approximately 0.05 to 0.10 grams. It is common for people selling narcotics to carry firearms. A tenth of a gram of heroin can sell for $10 or an ounce can sell for between $900 and $1,200. The current street value of 98.3 grams (just under four ounces) would be between $3,600 and $4,800. The form and amount of heroin found in this case indicated to Fritts that it was possessed for sale, and the quantity indicated a higher-level dealer. In addition, the clean baggies would be used to package the heroin into smaller amounts for sale. In Detective Fritts's opinion, based on the 98.37 grams of heroin in four individual baggies, the .22–caliber loaded revolver, the box of .22–caliber ammunition, the digital scale, and unused plastic baggies, both Dante and defendant possessed the heroin for sale. He also noted that the lack of paraphernalia to ingest the heroin further indicated the heroin was possessed for sale, not personal use. Detective Fritts acknowledged that the passenger being in a car in close proximity to the heroin, in and of itself, would not support the conclusion that the passenger possessed the heroin. However, in this case there was more than mere proximity; ammunition for the weapon located under defendant's seat was found in the backpack along with a ticket issued to defendant.

Prior to defendant's trial, defendant's brother, Dante, pleaded guilty to transportation of heroin (Health & Saf. Code, § 11352), and admitted he was armed with a firearm; pleaded guilty to possession of heroin for sale (Health & Saf. Code, § 11351), and admitted as to this offense he was armed with a firearm; pleaded guilty to possession of a firearm and a controlled substance (Health & Saf. Code, § 11370.1, subd. (a)); and carrying a loaded firearm in a vehicle and not being the registered owner. (Pen. Code, § 25850, subds. (a) & (c)(6)).[4] Dante testified at trial that he had picked his brother up about 15 minutes before the officers stopped them and all the items in the car were his personal property, not defendant's. Dante did not tell defendant he had a gun, ammunition, and drugs in the car. Dante did not think anyone getting in the car would have been able to see the gun, as it was concealed. As for the backpack with the traffic citation made out to defendant, Dante stated he had been living out of his car and defendant had a lot of his stuff in the car, so it "just got thrown in there with everything else." Defendant did not participate in possessing any of the contraband in Dante's car.

////

////

////

---

[4] [Fn. 1 in original excerpted text] Undesignated statutory references are to the Penal Code.

6

> While in custody, Dante had conversations with friends in which he stated, "they got us," and he identified the contraband as "our stuff" and said, "Go to Stockton [sic] Department page on Facebook, them niggas got all our shit on there ... [¶] ... they got everything they had caught us with." Dante claimed the "us" he was referring to was himself and defendant, but he maintained the contraband was his alone.

People v. Caviness, No. C076110, 2015 WL 4626857, at *1–2 (Cal. Ct. App. Aug. 4, 2015).

*Claim One – Insufficient Evidence*

    Legal Standards

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

> First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781. […] [W]hen "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S. Ct. 2781; *see also McDaniel*, 130 S. Ct. at 673–74.
>
> Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781.
>
> […]
>
> At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *See id.*

Id. at 1164–65.

////

7

And, where the trier of fact could draw conflicting inferences from the facts presented, one favoring guilt and the other not, the reviewing court will assign the one which favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). However, the mere fact that an inference can be assigned in favor of the government's case does not mean that the evidence on a disputed crime element is sufficient—the inference, along with other evidence, must demonstrate that a reasonable jury could find the element beyond a reasonable doubt, i.e., "'[A] reasonable inference is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of evidence.'" United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir. 2015).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must actually determine that the state appellate court could not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

A federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. See Jackson, 443 U.S. at 324 n. 16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

Discussion

Petitioner does not dispute the facts as set forth in the opinion of the California Court of Appeal. Instead, petitioner argues there was insufficient evidence to support his convictions because petitioner's brother admitted that the drugs and gun that were found in his car did not belong to petitioner, including that the vehicle itself was registered in petitioner's brother's name. ECF Nos. 1 at 5, 7, 9; 26 at 6. Petitioner contends his convictions failed to include evidence that "the petitioner had actual knowledge of the drugs and gun in the vehicle." ECF No. 26 at 6. However, the California Court of Appeal found, and this court agrees, that there was substantial evidence in the record to support petitioner's convictions.

> Defendant contends his convictions were not supported by substantial evidence. Specifically, he contends there was insufficient evidence to prove he had knowledge of the presence of illegal

8

contraband in the car or that he intended to exercise control over the contraband. Defendant claims "the evidence only supported a finding that he was an innocent passenger in his brother's car where the illegal contraband was found." We disagree.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) "[T]he testimony of a single witness is sufficient for the proof of any fact." (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031.) The testimony of an expert witness may also be sufficient to support a conviction. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324; *People v. Gardeley* (1996) 14 Cal.4th 605, 620.)

Each offense for which defendant was convicted requires proof that defendant had knowledge of the presence of the contraband and intended to exercise control over it. The drug offenses also required proof that defendant was aware of the drug's illegal character. (Health & Saf. Code, §§ 11352, 11351; § 25850, subd. (a)); *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746 (*Meza*); *People v. Harris* (2000) 83 Cal.App.4th 371, 374; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922; *People v. Cordova* (1979) 97 Cal.App.3d 665, 669; *People v. Singh* (2004) 119 Cal.App.4th 905, 912-913.) The offenses can be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*Meza*, supra, at p. 1746.)

"Possession may be either actual or constructive; the latter is established by showing that defendant maintained some control or right to control over contraband in the physical possession of another." (*People v. Rogers* (1971) 5 Cal.3d 129, 134.) "Exclusive possession is not necessary. A defendant does not avoid conviction if his right to exercise dominion and control over the place where the contraband was located is shared with others. [Citations.]" (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.]" (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Exercise of dominion and control must be something more than mere presence at the scene where contraband is located and more than the opportunity to access a location where

contraband is found. (*People v. Redrick* (1961) 55 Cal.2d 282, 285 [citing cases]; *People v. Glass* (1975) 44 Cal.App.3d 772, 777; e.g., *People v. Tabizon* (1958) 166 Cal.App.2d 271, 273-274.)

Here, defendant and his brother each had access to the gun and the drugs. Defendant was in the passenger seat of the car. The heroin was in the storage pocket of the passenger door right next to him and the gun was directly underneath him. The storage pocket was not covered and the baggies of heroin were visible from the passenger seat. The gun was partially sticking out from the seat, overlapping with the floorboard mat. It was positioned with the handle closest to the passenger door, making it most readily accessible to defendant. Although the gun and heroin were in Dante's car, defendant also kept many of his belongings in the car. A backpack in the trunk of the car included a traffic citation issued to defendant, along with a box of ammunition. The ammunition was the same caliber as that loaded into the gun found under defendant's seat, and the same number of rounds were missing from the box as were loaded in the gun. The traffic citation tied defendant directly to the ammunition contained in the backpack. Although Dante offered a plausible explanation of how the ticket ended up in the backpack, the jury was not required to accept that explanation. Defendant's backpack in the trunk of the car also tied defendant to other items in the trunk, including the digital scale, which appeared to have heroin residue on it, and the unused packaging materials. It was reasonable for the jury to infer defendant had access to the items and they were subject to his control.

Given the connection between the items in the backpack and trunk, and the contraband in the car, it was reasonable for the jury to infer defendant had access to those items, was aware of their presence, and exercised dominion and control over them. In addition, in conversations with friends, Dante referred to the contraband as belonging to him and defendant. Detective Fritts, an expert in possession of narcotics for sale, concluded both Dante and defendant possessed the heroin for sale. He noted that people selling drugs frequently also possess guns. The amount of heroin indicated the possession was for sale, not personal use. Furthermore, there was no paraphernalia related to personal use. He concluded defendant was also in possession of the drugs based on his proximity to the gun and drugs, the ammunition found in the backpack along with a traffic citation issued to defendant, and the digital scale and packaging materials found near the backpack. Based on the totality of this evidence, it was reasonable for the jury to infer defendant was not merely an innocent passenger in his brother's car; but rather, possessed the gun, ammunition, and heroin, and intended to sell the heroin. This is substantial evidence to support defendant's convictions.

People v. Caviness, 2015 WL 4626857, at *2-4.

In reviewing the evidence in the record, and the evidence referenced by the California Court of Appeal, there is sufficient evidence to support petitioner's convictions of transportation of heroin, carrying a loaded firearm in public, being a felon in possession of

ammunition, and possession of heroin with a loaded firearm. Although petitioner relies on his brother's admission of guilt as the crux of his argument for there being an absence of proof as to the personal knowledge element for these convictions, the evidence as a whole establishes petitioner's participation in the crimes. The traffic ticket addressed to the defendant that was located in a backpack containing a box of ammunition that was of the same caliber as the loaded gun found under petitioner's seat; the same number of rounds were missing from the box as were loaded in the gun; the gun located under petitioner's seat that was partially sticking out from under the seat and overlapping slightly with the floorboard mat; and petitioner's brother's conversations that "they got us" and referring to the contraband as "our stuff" and claiming that "us" referred to petitioner and petitioner's brother, are all evidence that shows that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Accordingly, this claim should be denied.

*Conclusion*

The petition should be denied for the reasons set forth above.

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus should be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 21, 2019

/s/ Gregory G. Hollows
United States Magistrate Judge